# Veley *v.* Clinger, Appellants.

*Insurance—Procuring insurance—Contract—Damages—Negligence.*

A private individual or a partnership engaged in the business of procuring insurance for others is not an insurer. In the course of such a business, such individual or partnership is only bound to exercise diligence and good faith in the effort to procure insurance.

In an action against a partnership engaged in the business of procuring insurance to recover damages for failure to insure certain household property, the case should not be submitted to the jury where the evidence shows that one of the defendants agreed on behalf of his firm to place insurance on plaintiff's household goods, and received therefor the necessary premium; that on return to his office he discovered that the property was already covered by a policy on which a premium had not been paid; that he immediately notified plaintiff of this fact, telling her that he would not take out a new policy, and that he had applied the money which he had received to the unpaid premium on the old policy; that thereafter plaintiff canceled the old policy with full knowledge that her effects were not insured, and that subsequently the property was destroyed by fire.

*Evidence—Letter—Mailing of letter—Presumption.*

When it is proved that a letter has been duly mailed and the person to whom it was addressed produces it at the trial in obedience to notice, he will, in the absence of evidence to the contrary, be presumed to have received it in the ordinary course of the transmission of the public mails.

Argued Feb. 12, 1901. Appeal, No. 3, Feb. T., 1901, by defendants, from judgment of C. P. Lycoming Co., June T., 1899, No. 370, on verdict for plaintiff in case of Philena Veley

v. H. J. Clinger, G. T. Burd, A. M. Carpenter, now or late trading as Union Insuring Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit for breach of contract. Before DUNHAM, P. J.

The facts are fully stated in the opinion of the Superior Court.

The court charged in part as follows:

[Now, gentlemen, this whole case may depend upon the question as to whether, after Mr. Carpenter returned to this agency and notified Mrs. Veley of the fact, if he did notify her of the fact, that there was a policy in force upon that property, upon the property she desired to have insured, and whether it was understood that the arrangement was off in regard to acquiring additional insurance upon that personal property. If that were true and the parties went on and canceled the insurance policy in force on that personal property, and if that closed the arrangements between them, then this plaintiff cannot recover. If, however, the arrangement still remained, if the Union Insuring Company were to go on and procure that insurance, if that policy was canceled, and if the arrangement was still to go on and procure that insurance, then this plaintiff could recover against this company, unless the defendants have honestly endeavored, used all honest means, to procure insurance and were unable to procure it. The agreement between the parties being a verbal agreement, there is some little writing between them; it will be for the jury to say whether that arrangement was still in force; whether these parties, whether Mr. and Mrs. Veley considered, after they had had this talk with Mr. Carpenter and were informed of the facts of the case, whether they still held Mr. Carpenter for the performance of that contract, or whether it was understood when that policy was canceled that that closed up the arrangement between them.] [2]

[If by the arrangement between these parties, or the agreement between them, the Union Insuring Company was to procure insurance in some solvent company to the amount of $300, and through their neglect or their bad faith they failed to procure it, or if they did not honestly endeavor to procure it, then

they have violated their contract and they would be responsible for whatever damages this plaintiff has suffered by reason of that failure to comply with that contract. It is only upon the theory that there is a contract between these parties, still existing after the policy was canceled by order of the plaintiff in this case, that the Union Insuring Company were to procure insurance upon that personal property to the amount of $300, and that they failed to do so, that this plaintiff can recover. If that was the understanding, if there was a positive agreement between these parties and they failed to carry it out, or through bad faith a breach of contract existed, then this plaintiff can recover the amount they have lost by reason of that failure ; and the amount they have lost would be the value of the policy which they agreed to give and which they failed to get, and that would be $300, with interest from thirty days after the loss occurred.] [3]

Defendants' point was as follows :

2. That there is no evidence of any such negligence upon the part of the defendants.

*Answer :* That we decline, and leave it to you under the circumstances. [4]

Verdict and judgment for plaintiff for $338.50.   Defendants appealed.

*Errors assigned* were (2–4) above instructions, quoting them.

*W. C. Gilmore* and *T. M. B. Hicks*, for appellants.—Under the admitted facts the defendants cannot, on the contract declared upon and proven, be held as insurers : De Taslet v. Crousellat, 1 Wash. C. C. 504 ; Morris v. Summerl, 2 Wash. C. C. 203 ; Shoenfeld v. Fleisher, 73 Ill. 404 ; Miner v. Tagert, 3 Binney, 204 ; Arrott v. Walker, 118 Pa. 249 ; Weed v. Cuming, 12 Pa. Superior Ct. 412.

Defendant can be held, if at all, only for breach of the express contract sued on, and the measure of damages for such breach is the value of the thing to be given (the insurance policy for $300), at the time when (November 11, 1807), and the place where it was to be given, subject to the proper set-off : Wells v. Abernethy, 5 Conn. 222 ; Billmeyer v. Wagner, 91 Pa. 92 ; Hutchinson v. Snider, 137 Pa. 1.

If this case be held to be in the nature of an action on the case for negligence, then defendant is not liable, because, if assumed or proven to be negligent, his negligence so assumed or proven was not the proximate cause of plaintiff's loss: Jones v. Gilmore, 91 Pa. 310; Marble v. Worcester, 4 Gray (Mass.), 395; Jones's App., 62 Pa. 324.

*Frank P. Cummings*, with him *W. E. Nickles*, for appellee.— The case was properly left to the jury: Arrott v. Walker, 118 Pa. 249.

The measure of damages in this case was the amount of protection which the appellant agreed to provide for the appellee: Billmeyer v. Wagner, 91 Pa. 92.

OPINION BY W. D. PORTER, J., July 25, 1901:

The amended statement filed by the plaintiff alleged, in substance, that the defendants were a firm of insurance agents, " whose business it was to negotiate contracts of fire insurance, namely, to procure contracts of insurance with fire insurance companies authorized by the laws of Pennsylvania for the protection of real and personal property from loss by fire for persons desiring such insurance; " and that on November 10, 1897, they undertook to procure for the plaintiff a policy in the amount of $300 upon her household furniture and received from her the sum of $4.05 for the purpose of paying the premium, that by reason of said contract the plaintiff was hindered and prevented from securing insurance elsewhere, that the defendants neglected and failed to cause said insurance to be procured and that the property was destroyed by fire on January 21, 1898, and by reason of the failure and negligence of defendants the plaintiff was without insurance at the time of said loss.

The evidence at the trial established the existence of the defendant firm and the character of its business to be as alleged in the statement; and that Carpenter, one of the partners, did on November 10, 1897, undertake to procure insurance in the amount stated upon the property described; these facts were admitted by the defendants.   The place of business of the defendant firm was at Williamsport, and the agreement between the plaintiff and Carpenter as to this insurance was made at Cammal within the same county, Lycoming, while the latter

was negotiating other insurance in the same neighborhood. Carpenter was on the next day back at the office of the defendant firm, in Williamsport, and in examining the records of the firm discovered that this very household furniture, as well as the dwelling which contained it, was covered by two policies which had been procured by the firm on September 2, 1897. At the time Carpenter entered into the agreement upon which this action is founded, he did not know or had forgotten, that the furniture was already insured and the plaintiff said nothing about that fact. The facts with regard to the existence of the two policies dated September 2, 1897 and the circumstances under which those policies came to be issued are practically undisputed. The real estate was subject to a mortgage to the Baltimore Building & Loan Association, which under the terms of the mortgage had the right to demand insurance upon the buildings, said insurance had been effected on September 2, 1896, for one year, and when those policies were about to expire the attorney of the mortgagee instructed the defendants to procure a renewal of the insurance and the policies dated September 2, 1897 were procured in pursuance of those instructions. Those policies insured the interests of both the plaintiff and her mortgagee, and were delivered by the defendants to the mortgagee. The plaintiff had been notified by the defendants that these policies had been issued and she offered in evidence at the trial a written statement by the defendants, dated October 1, 1897, giving the numbers of the policies, the companies by which they were issued, the amounts of the premiums and showing that they covered the dwelling and furniture ; this paper, " Plaintiff's exhibit C," was a part of her case in chief, and it thus appeared upon her own showing that she knew of the existence of these policies over a month before her agent undertook to negotiate with Carpenter for additional insurance upon the furniture. Carpenter, on November 11, 1897, wrote to the plaintiff in regard to his having received, on the day before, the sum of $4.05 to pay the premium on $300 insurance on the household furniture and called her attention to the fact that the furniture was covered by the policies of September 2, 1897, and that the premiums upon those policies had not been paid and that he had applied the $4.05 to that account; and for this reason they had not caused the policy for the $300 to be written. The defend-

ants produced evidence that this letter was mailed on the date it was written. The plaintiff was notified to produce this letter, and did actually produce it at the trial. It is true that the plaintiff and her husband, who acted as her agent in this matter, testified that they did not remember when this letter had been received, but this failure of memory cannot benefit them under the circumstances here presented. When it is proved that a letter has been duly mailed and the persons to whom it was addressed produces it at the trial in obedience to notice, they will, in the absence of evidence to the contrary, be presumed to have received it in the ordinary course of the transmission of the public mails. The evidence in this case establishes that the plaintiff must have received this letter within two days after it was written. She then had notice that the defendants would not issue a new policy to her on the household furniture and that they had applied the money which she had paid them on account of the premiums of the policies already in existence. If the defendants were guilty of any breach of their contract it was then complete and the measure of damages would be ascertained as of that date. The plaintiff had sometime prior to this procured insurance upon the buildings through another agency, and that fact became known to the defendants about the time of this attempt to effect an independent insurance upon the household furniture. On behalf of the companies which had written the policies of September 2, 1897, they insisted that there was an excess of insurance and that the policies issued through the other agencies should be canceled. After a correspondence between the plaintiff, the defendants, the other insurance agency and the officers of the Building & Loan Association, the plaintiff on November 22, 1897, peremptorily ordered the cancelation of the policies, dated September 2, 1897, which had been issued through the agency of the defendants. The defendants complied with this order, canceled the policies, charged a pro rata rate for the time which they had run, and credited the $4.05 upon account thereof, which left the sum of $1.20 due the defendants. The learned judge who tried the cause in the court below recognized the fact that this cancelation of the policies seemed to close the entire transaction, but he left to the jury this question, " Is there a contract between these parties, still existing after the policies were canceled by

order of the plaintiff in this case, that the Union Insuring Company were to procure insurance upon that personal property to the amount of $300." It was here that the learned judge fell into error, the defendants had on November 11, 1897 notified the plaintiff that the policy would not be written, and there was no evidence from which a jury should have been permitted to find that the defendants had subsequently agreed to procure the insurance. The agreement of the defendants was not a contract of insurance, had it been it would have been void; it only bound them to exercise diligence and good faith in their efforts to procure the insurance: Weed v. Cuming, 12 Pa. Superior Ct. 412; Arrott v. Walker, 118 Pa. 249. When they notified the plaintiff that her property was already covered and that no new policy would be written her right of action, if it ever arose, was complete.

The judgment is reversed.